UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
-------------------------------------------------------------------X

THE INTERNATIONAL BROTHERHOOD OF   :
TEAMSTERS UNION LOCAL NO. 710 PENSION  :
FUND, and JAMES E. DAWES and   :   **Civ. Action No. 13-cv-1844**
NEAL J. LONDON, Trustees, AND   :
THE INTERNATIONAL BROTHERHOOD OF   :   **JUDGE NORGLE**
TEAMSTERS UNION LOCAL NO. 710   :
HEALTH & WELFARE FUND, and JAMES   :   **MAGISTRATE JUDGE GILBERT**
E. DAWES and NEAL J. LONDON, Trustees,  :

          Plaintiffs,   :
                   :
                   :
     v.          :
                   :
THE BANK OF NEW YORK MELLON   :
CORPORATION, a Delaware corporation, and THE :
BANK OF NEW YORK MELLON (f/k/a THE BANK :
OF NEW YORK),   :
                   :
          Defendants.   :
-------------------------------------------------------------------X

 

### PLAINTIFFS' MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

 

Schindler Cohen & Hochman LLP
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6300 (tel.)
(212) 277-6333 (fax)

*Attorneys for Plaintiffs The International Brotherhood Of Teamsters Union Local No. 710*
*Pension Fund, and James E. Dawes and Neal J. London, Trustees, and The International*
*Brotherhood Of Teamsters Union Local No. 710 Health & Welfare Fund, and James E. Dawes*
*and Neal J. London, Trustees*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

SUMMARY OF THE ALLEGATIONS ..................................................................................4

    BNY Mellon's Securities Lending Program.........................................................................4

    The BNY Defendants Invest the Funds' Collateral In Lehman
    But Fail To Protect The Funds As Lehman Becomes Increasingly Risky ............................5

    The BNY Defendants Knew Of Lehman's Increasingly Risky
    Financial Condition And Took Steps To Protect Themselves But Did
    Nothing To Protect The Funds..............................................................................................6

    The *IBEW* Action..................................................................................................................6

ARGUMENT ...............................................................................................................................7

I.     The Legal Standard ...........................................................................................................7

II.    The Funds' Claims Are Timely ........................................................................................7

    A.    The Funds Lacked Actual Knowledge of the BNY
         Defendants' Breach Until March 11, 2010, Hence Their
         Claims Were Timely Filed on March 8, 2013 ......................................................8

    B.    The Funds' Claims Were Tolled By The *IBEW* Action .........................................9

III.   The Funds Have Stated A Claim Under ERISA § 404....................................................11

    A.    Courts Have Uniformly Rejected The Arguments Set
         Forth In The Motion............................................................................................11

    B.    The Case Law Cited By Defendants Is Inapposite ..............................................14

    C.    The Examiner's Report Demonstrates That Defendants
         Viewed Lehman As Increasingly Risky – And Hence
         Too Risky For Securities Lending .......................................................................15

IV.   The Funds State A Claim Under ERISA § 406 ...............................................................17

V.    Dismissal Of Claims Against BNY Mellon Corp. Is Premature .......................................19

VI.   If This Court Finds That The Complaint Is Deficient,
      The Funds Should Be Permitted To Replead....................................................................20

CONCLUSION...........................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. U.S.,*
    721 F. 3d 418 (7th Cir. 2013) ...................................................................................7

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ...................................................................................................3

*Andersen v. Chrysler Corp.,*
    99 F.3d 846 (7th Cir. 1996) .....................................................................................19

*Arivella v. Lucent Techs., Inc.,*
    623 F. Supp. 2d 164 (D. Mass. 2009) .....................................................................10

*Armstrong v. LaSalle Bank Nat'l Ass'n,*
    446 F.3d 728 (7th Cir. 2006) ...................................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................7

*Banco De La Republica De Colombia v. Bank of New York Mellon,*
    No. 1:10-cv-536 (S.D.N.Y. Dec. 2, 2010) .................................................................2

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,*
    377 F.3d 682 (7th Cir. 2004) ...................................................................................20

*Bd. of Trs. of Operating Eng'rs Pension Trust v. JPMorgan Chase Bank, Nat'l Ass'n,*
    No. 09-CIV-9333 KBF, 2013 WL 1234818 (S.D.N.Y. Mar. 27, 2013) ...................18

*Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp.,*
    No. 09 Civ. 6273(RMB), 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011) ......... *passim*

*Bear Hollow, L.L.C. v. Moberk, L.L.C.,*
    No. 5:05CV210, 2006 WL 1642126 (W.D.N.C. June 5, 2006)................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................................7

*U.S. ex rel. Bierman v. Orthofix Int'l, N.V.,*
    748 F. Supp. 2d 123 (D. Mass. 2010) .....................................................................19

*Boggs v. Adams,*
   45 F.3d 1056 (7th Cir. 1995) ........................................................................10

*Boustead v. Barancik,*
   151 F.R.D. 102 (E.D. Wis. 1993) ................................................................19

*Bruno v. Time Warner Pension Plan,*
   No. 11-57000, 2013 WL 3855411 (9th Cir. July 26, 2013).........................10

*Compsource Oklahoma v. BNY Mellon, N.A.,*
   No. CIV-08-469-KEW, 2009 WL 2366112 (E.D. Okla. July 31, 2009) ...................2

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.,*
   720 F. Supp. 1342 (7th Cir. 1990) ................................................................14

*In re Discovery Zone Sec. Litig.,*
   181 F.R.D. 582 (N.D. Ill. 1998) ....................................................................11

*Diebold ex rel. ExxonMobil Sav. Plan v. N. Trust Invs., N.A.,*
   No. 09 C 1934, 2010 WL 3700387 (N.D. Ill. Sept. 7, 2010)...............12, 13

*Diebold ex rel. ExxonMobil Sav. Plan v. N. Trust Invs., N.A.,*
   No. 09 CV 1934, 2012 WL 4017929 (N.D. Ill. Sept. 10, 2012)..................8

*Fornell v. Morgan Keegan & Co., Inc.,*
   No. 6:12-cv-38-Orl-28TBS, 2013 WL 656321 (M.D. Fla. Jan. 11, 2013) .............10

*Fornell v. Morgan Keegan & Co., Inc.,*
   No. 6:12-cv-38-Orl-28TBS, 2013 WL 656457 (M.D. Fla. Feb. 22, 2013) .............10

*In re Gen. Growth Props., Inc.,*
   No. 08 CV 6680, 2010 WL 1840245 (N.D. Ill. May 6, 2010).................7, 11

*Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.,*
   No. 11 Civ. 6345 (RJS), 2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012)............2, 13

*George v. Kraft Foods Global, Inc.,*
   814 F. Supp. 2d 832 (N.D. Ill. 2011) ..............................................................8

*Hall v. Variable Annuity Life Ins. Co.,*
   No. 12-20440, 2013 WL 4233103 (5th Cir. Aug. 15, 2013) ......................11

*In re Huntington Bancshares Inc. Erisa Litig.,*
   620 F. Supp. 2d 842 (S.D. Ohio 2009) .........................................................15

*Joseph v. Wiles,*
   223 F.3d 1155 (10th Cir. 2000) ....................................................................11

*Keach v. U.S. Trust Co.*,
   419 F.3d 626 (7th Cir. 2005) ...................................................................14

*La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*,
   No. 09 C 7203, 2011 WL 1770266 (N.D. Ill. May 6, 2011) ...................................13

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) ...................................................................17

*Lowen v. Tower Asset Mgmt., Inc.*,
   829 F.2d 1209 (2d Cir. 1987)....................................................................17

*N.C. Dep't of State Treasurer v. Bank of New York Mellon*,
   No. 12 CVS 3920, 2012 WL 5383312 (N.C. Super. Oct. 31, 2012) ...................2, 20

*Nelson v. Brinson Partners, Inc.*,
   No. 03 C 6446, 2004 WL 178180 (N.D. Ill. Jan. 16, 2004) ...................................13

*Pac. Select Fund v. Bank of New York Mellon*,
   No. 8:10-cv-00198 (C.D. Ca. Jan. 30, 2012) ...................................................12

*Pac. Select Fund v. Bank of New York Mellon*,
   No. 8:10-cv-00198 (C.D. Ca. Sept. 20, 2010) ....................................................2

*Pace Indus. Union-Mgmt. Pension Fund v. Bank of New York Mellon*,
   No. 1:11-cv-6292 (S.D.N.Y. July 20, 2012).............................................. *passim*

*Patten v. N. Trust Co.*,
   703 F. Supp. 2d 799 (N.D. Ill. 2010) ...................................................7, 18

*Policy & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013)....................................................................10, 11

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
   919 F.2d 1216 (7th Cir.1990) ....................................................................8

*Regence Blueshield v. BNY Mellon Bank*,
   No. 2:09-cv-618 (W.D. Wa. Sept. 9, 2010) ...........................................2, 12

*The Salvation Army, a Ga. Corp. for the Salvation Army S. Territory v. Bank of New York Mellon*,
   Index No. 650888/2011 (N.Y. Sup. Ct., N.Y. Cnty. Jan. 25, 2013) ...................2, 12

*Sandoval v. Simmons*,
   622 F. Supp. 1174 (C.D. Ill. 1985) ...............................................................18

*Santomenno v. Transamerica Life Ins. Co.*,
   No. CV 12-02782 DDP, 2013 WL 603901 (C.D. Cal. Feb. 19, 2013)....................18

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,*
    712 F.3d 705 (2d Cir. 2013) .................................................................................14

*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506 (2002) ..............................................................................................15

*Teytelbaum v. Unum Grp.,*
    No. 8:09-cv-1231-T-33TBM, 2010 WL 4689818 (M.D. Fla. Nov. 11, 2010) ........19

*Tibble v. Edison Int'l,*
    639 F. Supp. 2d 1122 (C.D. Cal. 2009) ..................................................................19

*Treasurer of South Carolina v. Bank of New York Mellon Corp.,*
    No. 2011-CP-40-00533 (S.C. Ct. Comm. Pleas Feb. 14, 2013) ...............................2

*Wright v. Or. Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004) ...............................................................................19

**Statutes**

29 U.S.C. § 1102 ..........................................................................................................20

29 U.S.C. § 1106(b) .....................................................................................................17

29 U.S.C. § 1113 ............................................................................................................8

The International Brotherhood of Teamsters Union Local No. 710 Pension Fund and The International Brotherhood of Teamsters Union  Local No. 710 Health & Welfare Fund (together, the "Funds") and their trustees, James E. Dawes and Neal J. London, respectfully submit this brief opposing the motion to dismiss ("Motion") the Funds' amended complaint ("AC") submitted by The Bank of New York Mellon Corporation ("BNY Mellon Corp.") and The Bank of New York Mellon ("BNY" and, together with BNY Mellon Corp., the "BNY Defendants").

## PRELIMINARY STATEMENT

The BNY Defendants held complete discretionary authority over the investments in securities lending accounts that they managed for the Funds.  As the Funds' fiduciary, the BNY Defendants were obligated to use that discretion to invest in and maintain conservative, safety-first assets for the purpose of generating money market-like income, with the attendant risks of a money market account.  The BNY Defendants, however, invested $24.5 million of the Funds' assets in two floating rate notes issued by Lehman Brothers Holding Company, Inc. (respectively, the "Lehman Notes" and "Lehman") and, despite knowing that investments in Lehman were exposed to increasingly heightened risk leading up to Lehman's bankruptcy in September 2008, the BNY Defendants took not a single step to protect the Funds.

Indeed, the BNY Defendants held the Lehman Notes in the Funds' accounts while news reports, economists and experts repeatedly questioned Lehman's viability, ratings agencies downgraded Lehman's credit, and the cost of Lehman's credit default swaps – a key indicator of the market's view of Lehman's creditworthiness – skyrocketed.  Worse, the BNY Defendants protected themselves from Lehman's heightened risk but did nothing to protect the Funds.  The BNY Defendants thus breached duties of prudence and loyalty under ERISA §§ 404 and 406.

The Funds join a long list of securities lending clients who have sued the BNY

Defendants for such misconduct, and courts across the country have allowed those cases to go

forward to discovery and trial.[1] Thus, while the BNY Defendants contend that an ERISA § 404

claim cannot be based upon the many "red flags" regarding Lehman, that precise argument was

rejected in cases like *Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of*

*New York Mellon Corp.* (the "*IBEW* Action"), 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011).

There, the court cited evidence that the BNY Defendants continued to hold Lehman notes

(including the Lehman Notes at issue here) through Lehman's bankruptcy, even though, based

on their knowledge of the increased risks, they had disallowed new purchases of Lehman

investments in November 2007 and had held numerous meetings discussing risks arising from

Lehman's deteriorating financial condition. *Id.* at *3.

Likewise, although the BNY Defendants assert that there is no ERISA § 406(b) claim

because either the purchases of the Lehman Notes were within the Funds' investment guidelines

---

[1]     *See, e.g., Pace Indus. Union-Mgmt. Pension Fund v. Bank of New York Mellon*, No. 1:11-cv-6292 (S.D.N.Y. July 20, 2012) (denying motion to dismiss ERISA claims based on imprudent management of securities lending account by, among other things, investing in and failing to sell Lehman notes); *Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11 Civ. 6345 (RJS), 2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012) (denying motion to dismiss claims based on securities lending program investments in Lehman); *The Salvation Army, a Ga. Corp. for the Salvation Army S. Territory v. Bank of New York Mellon*, Index No. 650888/2011 (N.Y. Sup. Ct., N.Y. Cnty. Jan. 25, 2013) (same); *N.C. Dep't of State Treasurer v. Bank of New York Mellon*, No. 12 CVS 3920, 2012 WL 5383312 (N.C. Super. Oct. 31, 2012) (same); *Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp.*, No. 09 Civ. 6273(RMB), 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011) (denying summary judgment based on, among other things, evidence that defendants continued to hold Lehman notes through Lehman's bankruptcy, despite their awareness of the increasing risk of Lehman investments); *Pac. Select Fund v. Bank of New York Mellon*, No. 8:10-cv-00198 (C.D. Ca. Sept. 20, 2010) (denying motion to dismiss breach of fiduciary duty claim with respect to securities lending program investments); *Compsource Oklahoma v. BNY Mellon, N.A.*, No. CIV-08-469-KEW, 2009 WL 2366112 (E.D. Okla. July 31, 2009) (same); *Regence Blueshield v. BNY Mellon Bank*, No. 2:09-cv-618 (W.D. Wa. Sept. 9, 2010) (same). *See also Treasurer of South Carolina v. Bank of New York Mellon Corp.*, No. 2011-CP-40-00533 (S.C. Ct. Comm. Pleas Feb. 14, 2013) (denying motion to dismiss claims based on securities lending program investments); *Banco De La Republica De Colombia v. Bank of New York Mellon*, No. 1:10-cv-536 (S.D.N.Y. Dec. 2, 2010) (same) (summary order and complaint related thereto attached).

    All cases referenced in this footnote are attached as **Exhibits A through J**, respectively, to the Declaration of Matthew A. Katz dated September 12, 2013 ("Katz Decl."). The Katz Decl. also attaches other unpublished decisions cited herein.

or the failure to sell the Lehman Notes was not a "transaction," numerous courts have rejected those assertions as well. As the Funds allege, the BNY Defendants placed their own profits earned from the Lehman Notes ahead of the Funds' conservative interests and insulated themselves from exposure to Lehman risk while doing nothing to protect the Funds. Multiple decisions have found that these allegations are sufficient to sustain a claim.

The only "new" argument made by the BNY Defendants in their Motion is that the Funds' claims are time-barred. But that argument is wrong for many reasons. First, while the BNY Defendants assert that the Funds knew of their claims as of Lehman's September 15, 2008 bankruptcy filing, the Funds did not learn of the BNY Defendants' wrongdoing until after March 11, 2010, when the Bankruptcy Examiner published a report identifying steps taken by the BNY Defendants to protect themselves from Lehman's deteriorating financial condition. Second, the BNY Defendants assert that ERISA § 1113(2)'s three-year time period is a statute of repose, but courts have uniformly found that time period to be a statute of limitations. Third, relying on a Second Circuit decision, the BNY Defendants argue that *American Pipe* tolling does not apply to statutes of repose, but: (i) that is not the law in this Circuit; (ii) the decision does not apply to ERISA § 1113(2); and (iii) no statute of repose is at issue here. Rather, as the Funds allege, as members of the putative class in the *IBEW* Action, *American Pipe* tolled their claims under ERISA's three-year limitation period from the date of filing until denial of class certification.[2]

The Court should deny the Motion and permit the Funds' claims to proceed to discovery.

---

[2] In *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974), the Supreme Court established that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."

## SUMMARY OF THE ALLEGATIONS

### BNY Mellon's Securities Lending Program

In 2006, the BNY Defendants solicited the Funds to participate in their securities lending program, which they assured the Funds was a safe and conservative way to generate money market-like income returns from custodied securities with the attendant risks of a money market account. (AC ¶¶ 1, 4, 31-35.) Given these modest goals, the Funds entered into securities lending agreements ("Agreements") with BNY Mellon on about June 6, 2006. (AC ¶ 36.)

As the BNY Defendants explained the program, they arrange to loan a client's securities, which are in the BNY Defendants' custody, to borrowers. In return, the lender receives collateral, usually cash, which the BNY Defendants then have discretion to invest, consistent with the lender's investment goals set forth in an Approved Investments schedule, which was appended to the Agreements. (AC ¶¶ 37-40; Exs. A & B to AC at Article IV, § 2(d).) The Approved Investments reflect the Funds' concern for preserving principal, limiting exposure to losses, and maintaining high liquidity, thus including low-yielding but secure products like government bonds, high-grade commercial paper, notes, bonds, and CDs.

When the loans are terminated, the lender must return the collateral to the borrower, plus an additional payment or "rebate" as compensation for the use of the collateral. (AC ¶¶ 38-39, 42; Ex. A & B to AC at Article I, § 22.) Because the borrower is entitled to the immediate return of its collateral upon repayment of the securities loan, it is critically important that the investments made with the collateral be low risk, short-term and highly liquid. (AC ¶ 28.)

BNY Mellon, per the Agreements, is entitled to 20% of all earnings on investments, thus incentivizing the BNY Defendants to seek higher-yielding, and riskier, assets for a lender's investment account. (AC ¶ 42.) However, the BNY Defendants bear no risk of loss on the

securities they purchase; the lender alone bears that risk. Thus, if a loan is terminated and the investment's market value does not cover the loan's repayment, the Funds must make up the deficiency. (AC ¶ 42; Ex. A at Article IV, § 2(c).)

### The BNY Defendants Invest the Funds' Collateral In Lehman But Fail To Protect The Funds As Lehman Becomes Increasingly Risky

In August and December 2006, the BNY Defendants invested $24.5 million of the collateral received by the Funds in the two Lehman Notes. (AC ¶¶ 50-51.) By early 2007, there were alarming signs of a growing crisis in the mortgage markets, including the bankruptcy of several sub-prime mortgage firms and reports of increasing delinquencies and defaults of sub-prime mortgage borrowers and the corresponding adverse impact on securities derived from sub-prime mortgages. (AC ¶¶ 9, 52, 54, 63-64.) In the ensuing months, (i) hundreds of asset-backed securities backed by subprime mortgages were downgraded or put on credit watch; (ii) numerous banks with subprime business either went bankrupt or needed emergency capital injections; (iii) major investment banks wrote down billions of dollars of value of asset-backed and other derivative securities based on subprime and Alt-A mortgages; and (iv) senior governmental leaders sounded warnings on the state of the housing and credit markets. (AC ¶¶ 52-60.) Unknown to the Funds, Lehman's core businesses were severely impacted by these events. (AC ¶ 61.)

Reports of deteriorating conditions continued in early 2008: Bear Stearns, an investment bank that, like Lehman, had significant exposure to the housing and mortgage markets, collapsed and banks wrote down additional billions of dollars of assets derived from mortgage collateral. (AC ¶¶ 62-63.) Widespread speculation followed as to the soundness of maintaining an investment in Lehman. The cost of Lehman's credit default swaps skyrocketed, reflecting the market's perception of Lehman's reduced creditworthiness and the corresponding heightened

risk of the Lehman Notes. (AC ¶ 73.) Lehman's stock price declined precipitously, its credit

rating was downgraded, and its efforts to sell all or part of its assets failed. (AC ¶¶ 75-77, 79.)

The sheer volume and gravity of these reports should have compelled any reasonable

securities lending fiduciary to sell the Lehman Notes; the suggestion that Lehman was imperiled

rendered those investments inappropriate for the Funds' securities lending accounts. (AC ¶ 81.)

### The BNY Defendants Knew Of Lehman's Increasingly Risky Financial Condition And Took Steps To Protect Themselves But Did Nothing To Protect The Funds

The BNY Defendants knew that Lehman was in dire financial trouble and had taken steps

to protect themselves. On March 11, 2010, a Report filed by the Examiner in connection with

Lehman's bankruptcy was made publicly available, which provided a glimpse into information

that the BNY Defendants had concealed from the Funds regarding their relationship with

Lehman and their knowledge as to Lehman's financial condition leading up to its bankruptcy.

(AC ¶¶ 90-91.) Among other things, the Examiner's Report revealed that, beginning in March

2008, the BNY Defendants discussed the increasing risk, and eventually demanded that Lehman

post collateral to protect the BNY Defendants, as one of Lehman's clearing banks, from

exposure should Lehman fail. (AC ¶ 92.) The BNY Defendants, however, did nothing to reduce

the Funds' exposure to Lehman. (AC ¶¶ 95-96.)

### The *IBEW* Action

On July 13, 2009, the *IBEW* Action was commenced seeking class relief against the BNY

Defendants for violations of ERISA §§ 404 and 406, based on the investment of securities

lending collateral in Lehman-issued notes (including the two Lehman Notes) and the failure to

manage those investments as Lehman collapsed. *IBEW* Action, 287 F.R.D. 216 (S.D.N.Y.

2012). The putative class included "'all ERISA-governed plans that participated in [the BNY

Defendants'] securities lending program and had collateral invested in [certain Lehman notes] as

of September 15, 2008,'" thus including the Funds. *Id.* at 218-19. In a decision issued on August 16, 2012, the court denied class certification. *Id.* at 230.

## ARGUMENT

### I. The Legal Standard

To withstand a motion to dismiss, Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal citations omitted). This "does not require 'detailed factual allegations'" (*id.* at 678) but "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court has held, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Further, the Court must, for purposes of a motion to dismiss, "construe all facts in favor of the Plaintiff[s]." *In re Gen. Growth Props., Inc.*, No. 08 CV 6680, 2010 WL 1840245, at *7 (N.D. Ill. May 6, 2010); *Patten v. N. Trust Co.*, 703 F. Supp. 2d 799, 813 (N.D. Ill. 2010) ("a court's opinion that a claim is unlikely to succeed is not a basis to grant a motion to dismiss"). *See also Alexander v. U.S.*, 721 F. 3d 418, 422 (7th Cir. 2013) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)) ("the plausibility requirement demands only that a plaintiff provide sufficient detail 'to present a story that holds together'").

### II. The Funds' Claims Are Timely

The BNY Defendants posit that the Funds' claims are untimely because (i) ERISA § 1113(2)'s three-year time period is a statute of repose under federal securities laws; (ii) a Second Circuit case held that *American Pipe* does not toll statutes of repose; and (iii) the Funds "were aware of the alleged breach on September 15, 2008" (Defendants' Brief ("Def. Br.")) at 5.

As set forth below, the BNY Defendants are wrong.

   **A.     The Funds Lacked Actual Knowledge Of The BNY
           Defendants' Breach Until March 11, 2010, Hence
           Their Claims Were Timely Filed on March 8, 2013**

ERISA § 1113 bars claims "with respect to a fiduciary's breach of any responsibility,

duty, or obligation" after "the earlier" of:

> (1) six years after (A) the date of the last action which constituted a
> part of the breach or violation, or (B) in the case of an omission the
> latest date on which the fiduciary could have cured the breach or
> violation, or
>
> (2) three years after the earliest date on which the plaintiff had
> actual knowledge of the breach or violation; except that in the case
> of fraud or concealment, such action may be commenced not later
> than six years after the date of discovery of such breach or
> violation.

29 U.S.C. § 1113.

Under Seventh Circuit law, the Funds' claims did not accrue until they "had specific

knowledge of the actual breach of duty upon which [they] sue[d]." *George v. Kraft Foods*

*Global, Inc.*, 814 F. Supp. 2d 832, 850 (N.D. Ill. 2011).  *See also Diebold ex rel. ExxonMobil*

*Sav. Plan v. N. Trust Invs., N.A.*, No. 09 CV 1934, 2012 WL 4017929, at *3 (N.D. Ill. Sept. 10,

2012) (quoting *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1222 (7th Cir.

1990)) ("[a]ctual knowledge under ERISA is not constructive knowledge, and requires 'specific

knowledge of the actual breach'"); *Radiology Ctr., S.C.*, 919 F.2d at 1222 (district court "err[ed]

in] hold[ing] that the ERISA statute of limitations . . . begins to run 'if the defendant can show

that the plaintiff had either actual *or constructive* knowledge.' ***Only actual knowledge will do.***"

(emphasis added)).

Contrary to the BNY Defendants' argument (Def. Br. at 5), the Funds were unaware of

the BNY Defendants' breaches until after March 11, 2010, when the Examiner's Report was

published and they learned of information "regarding Defendants' relationships with Lehman

and Defendants' true knowledge as to Lehman's financial uncertainty in the days and months

leading up to Lehman's filing for Chapter 11 bankruptcy protection . . . ." (AC ¶ 90.) More

specifically, the publication of the Examiner's Report first revealed that (1) BNY Mellon served

as one of Lehman's clearing banks; (2) as a clearing bank, BNY Mellon was uniquely positioned

to understand Lehman's financial instability; (3) beginning in March 2008, counterparties and

clearing banks, including the BNY Defendants, became increasingly skeptical of Lehman's

ability to maintain the status quo of its operations, due in part to its large leverage ratios and real-

estate heavy balance sheet; (4) by the summer of 2008, the BNY Defendants had begun to

protect their own interests by demanding collateral deposits from Lehman in order to secure

intraday credit risk and address the market's obvious concerns about Lehman's financial

condition; and (5) the BNY Defendants further sought to limit their exposure to Lehman by

requesting that Lehman prefund its European commercial papers and medium term note

programs and having Lehman fund a money market account that would cover the BNY

Defendants' forecasted intraday exposure to Lehman. (AC ¶¶ 90-91.) This action was

commenced on March 8, 2013, less than three years after publication of the Examiner's Report

and within six years of Lehman's bankruptcy, the last date on which those breaches could have

been partly cured. Thus, without any tolling, the Funds' claims are timely.

### B.  The Funds' Claims Were Tolled By The *IBEW* Action

Even if the Funds had actual knowledge of the BNY Defendants' breaches on September

15, 2008, their claims are timely because, as members of the putative class in the *IBEW* Action,

they benefit from *American Pipe* tolling between the date the *IBEW* Action was commenced and

denial of class certification – from July 13, 2009 until August 16, 2012.  Focusing entirely on

subsection (2) of § 1113, the BNY Defendants insist that ERISA § 1113(2)'s three year time

frame is a statute of repose and that a Second Circuit decision (*Policy & Fire Ret. Sys. of City of*

*Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ("*IndyMac*")), precludes *American*

*Pipe* tolling.  The BNY Defendants are wrong.

      Contrary to the BNY Defendants' contention – which is unsupported by any cite –

§ 1113(2)'s three-year period is a statute of limitations.  *See Arivella v. Lucent Techs., Inc.*, 623

F. Supp. 2d 164, 173 (D. Mass. 2009) ("section [11]13(2) is a standard statute of limitations,

requiring that a plaintiff file suit within a certain period of time after he or she becomes aware of

an injury suffered") (internal quotations omitted).  In contrast, § 1113(1) is "a prototypical statute

of repose . . . ." *Id.* at 173 (internal quotations omitted).  *See also Bruno v. Time Warner Pension*

*Plan*, No. 11-57000, 2013 WL 3855411, at *1 (9th Cir. July 26, 2013) ("Section 1113 contains

statutes of limitations and repose.  The repose period requires an action be filed within six

years"); *Fornell v. Morgan Keegan & Co., Inc.*, No. 6:12-cv-38-Orl-28TBS, 2013 WL 656321

(M.D. Fla. Jan. 11, 2013) (report and recommendation adopted); *Fornell v. Morgan Keegan &*

*Co., Inc.*, No. 6:12-cv-38-Orl-28TBS, 2013 WL 656457 (M.D. Fla. Feb. 22, 2013) (same).  *See*

*also Boggs v. Adams*, 45 F.3d 1056, 1060 (7th Cir. 1995) (explaining difference between statutes

of limitation and statutes of repose).[3]

      Nor are the BNY Defendants correct that the Second Circuit's decision in *IndyMac*

applies.  Indeed, this Court need not even consider the *IndyMac* decision because the tolling here

does not involve a statute of repose.  Moreover, the Second Circuit ruling is not controlling and,

as the BNY Defendants admit (albeit in a footnote), the Seventh Circuit has noted that *American*

---

[3]     Even if the Funds knew of the BNY Defendants' wrongdoing on September 15, **2007**, the Funds'
claims would still be timely since those claims were tolled while the *IBEW* Action class claims were
pending based on the three year statute of limitations period.  *See Arivella*, 623 F. Supp. 2d at 180.

*Pipe* tolling applies to statutes of repose, and other courts have reached the same conclusion. (Def. Br. at 5, n.3) (citing *Appleton Elec. Co. v. Graves Truck Line Inc.*, 635 F.2d 603, 609 (7th Cir. 1980)); *see also Joseph v. Wiles*, 223 F.3d 1155, 1168 (10th Cir. 2000) ("*American Pipe* tolling applies to the statute of repose governing [plaintiff]'s action"); *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 600 n. 11 (N.D. Ill. 1998) (explaining that *American Pipe* tolling applies to statute of repose for securities fraud claims articulated in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363-64 (1991)). *See also Hall v. Variable Annuity Life Ins. Co.*, No. 12-20440, 2013 WL 4233103, at *4 (5th Cir. Aug. 15, 2013) (finding that statute of repose had expired, but applying *American Pipe* tolling to determine expiration date of statute of repose). Finally, *IndyMac* had nothing to do with ERISA but, instead, declined to apply *American Pipe* tolling to the statute of repose in § 13 of the Securities Act, 15 U.S.C. § 77(m).

## III.     The Funds Have Stated A Claim Under ERISA § 404

### A.     Courts Have Uniformly Rejected The Arguments Set Forth In The Motion

Under Seventh Circuit law, a fiduciary may be imprudent in breach of ERISA § 404 (29 U.S.C. § 1104) if it has ignored changed circumstances that increased risk of loss. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006). *See also In re Gen. Growth Props., Inc.*, 2010 WL 1840245, at *7 (citing *Armstrong*, 446 F.3d at 732) (explaining that fiduciary "is supposed to be careful rather than bold"). The Amended Complaint contains ample allegations that the BNY Defendants are liable for failing to reduce the Funds' exposure to Lehman in light of, in the words of the *Armstrong* court, "changed circumstances that have increased the risk of loss" (*Armstrong*, 446 F.3d at 732) – here, mounting and substantial evidence that Lehman was in significant trouble and thus an inappropriate investment for a conservative securities lending account. (AC ¶¶ 90-96.)

The BNY Defendants dismiss the Funds' allegations as hindsight second-guessing. (Def. Br. at 1, 8.) However, the fact that there was a steady and increasing flow of information from the media, experts and market professionals about Lehman's financial distress, its ratings downgrades, its declining stock price and the skyrocketing cost of insuring against Lehman's default via credit default swaps, and, indeed, its very viability, should have compelled the BNY Defendants to minimize the Funds' investment in the Lehman Notes. (AC ¶¶ 90-96.)

Numerous courts – including two in this District – have rejected this "hindsight" argument in connection with securities lending-related claims.[4] In *Diebold ex rel. ExxonMobil Sav. Plan v. N. Trust Invs., N.A.*, No. 09 C 1934, 2010 WL 3700387 (N.D. Ill. Sept. 7, 2010), the defendant argued that ERISA claims were "'nothing but conclusory allegations and 20/20 hindsight.'" *Id.* at 3. The court disagreed, holding that an ERISA § 404 claim was sufficiently pled by allegations that defendants "ignored warning signs that would have alerted a prudent fiduciary to follow a different investment strategy." *Id.* at 4. Indeed, "the fact that economists displayed concern over the health of the economy may be sufficient to suggest plausibly that a

---

[4]    In fact, the BNY Defendants have unsuccessfully made this "hindsight" argument many times. *See IBEW* Action, 2011 WL 6130831 (Katz Decl., Ex. E), at *1, (rejecting argument that "'the [Lehman] bankruptcy was a surprise to BNYM'" and "'hindsight evaluations of an investment's performance cannot support a claim of imprudence under ERISA'"); *Pac. Select Fund v. Bank of New York Mellon*, No. 8:10-cv-00198 (C.D. Ca. Jan. 30, 2012) (Katz Decl., Ex. M) (holding that "BNY Mellon was aware of risks specific to Lehman prior to the bankruptcy filing and took steps to reduce its Lehman exposure. . . . From these facts, a trier of fact could conclude that . . . the Lehman bankruptcy [was] reasonably foreseeable to BNY Mellon . . . ."); *Salvation Army* (Katz Decl., Ex. C), at 5-6 (in denying motion to dismiss securities-lending related claims based in part on improper investment in the Lehman Notes, rejecting argument that claims were premised on hindsight); *Pace Indus. Union-Mgmt. Pension Fund* (Katz Decl., Ex. A), at 22-23 (denying motion to dismiss ERISA § 404 claim where plaintiff asserted that defendant had removed Lehman from the list of approved borrowers for the lending of the fund' securities, was aware that Lehman faced ratings downgrades and the drop in the value of Lehman bonds following the collapse and sale of Bear Stearns, and attended meetings discussing the possibility of a Lehman bankruptcy but took no action to protect the plaintiff's investments at that time, concluding that "these assertions raise factual questions that are inappropriate for resolution at this stage of a motion to dismiss"); *Regence Blueshield* (Katz Decl., Ex. H), at 5 ("Although [BNY] argues that it could not have predicted the fund's collapse before the rest of the market, that claim is better resolved through a motion for summary judgment, not a motion aimed at the sufficiency of the pleadings.").

prudent fiduciary would have altered their investment of the collateral pool assets." *Id.* And in

*La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*, No. 09 C 7203, 2011 WL 1770266 (N.D. Ill.

May 6, 2011) (Gettleman, J.), the court determined:

> [w]hether plaintiffs can establish that these warning signs would have
> caused a reasonably prudent fiduciary to act differently than did defendants,
> or whether defendants are correct that plaintiffs are simply relying on 20/20
> hindsight, is a question of fact that might possibly (but not likely) be
> resolved on summary judgment, but cannot be decided on a motion to
> dismiss.

*Id.* at *4. *See also Nelson v. Brinson Partners, Inc.*, No. 03 C 6446, 2004 WL 178180, at *4

(N.D. Ill. Jan. 16, 2004) (declining to dismiss breach of fiduciary duty and imprudence claims

under ERISA, holding that "assertions that numerous warnings and 'red flags' existed at the time

of [defendant's] purchase . . . are enough to advance a 'possible claim'").

Likewise, while the BNY Defendants assert that they cannot be liable if the Lehman

Notes were within the Funds' approved investment guidelines (Def. Br. at 2), that precise

argument was also rejected in both *La. Firefighters' Ret. Sys.*, 2011 WL 1770266, at *4 ("the

fact that a pool's guidelines would allow a type of investment does not per se indicate that such

an investment would be prudent given a particular set of financial circumstances. It was

defendant's duty to determine whether an allowed investment would be prudent") and *Diebold*,

2010 WL 3700387 at *3 (the fact that the investments were within the specified guidelines could

not justify dismissal of breach of fiduciary duty claim). *See also Bd. of Trs. ex rel. Gen. Ret. Sys.

of Detroit*, 2012 WL 3930112, at *3 (in denying BNY's dismissal motion, rejecting argument

that no breach existed because purchase of the Lehman Notes did not violate the customer's list

of approved investments).

This Court should find that the Funds' claims under ERISA § 404 are sufficiently pled.

### B.    The Case Law Cited By Defendants Is Inapposite

The BNY Defendants urge this Court to apply the Second Circuit's decision in *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 721 (2d Cir. 2013) ("*St. Vincent's*"), which upheld the dismissal of a complaint alleging that an ERISA plan administrator breached its duties by failing to reduce the plan's exposure in the face of "warning signs" concerning a broad category of securities. The BNY Defendants' reliance on *St. Vincent's* is misplaced for at least two reasons.

First, *St. Vincent's* is not binding on this Court and is at odds with Seventh Circuit precedent holding that, in managing a securities lending program, a bank can be liable for ERISA violations if it ignored "warning signs" of changed circumstances of increased risk. *See, supra*, cases cited at 13-14.

Second, the pleading deficiencies in *St. Vincent's* are entirely absent here. In *St. Vincent's*, the complaint: (i) failed to identify how warning signs concerning mortgage-backed securities in general and/or the plight of the issuers of mortgage-back securities related to the securities in the plaintiffs' portfolio; (ii) failed to allege that the bank had not conducted a reasonable investigation in light of the warning signs; and (iii) failed to allege how any added risk of owning the securities rendered those investments imprudent to maintain in the portfolio. *St. Vincent,* 712 F.3d at 722. The Funds' Amended Complaint, however, makes clear that ***any*** heightened risk – which was increasingly apparent by the summer of 2008 – rendered the Lehman Notes inappropriate for the Funds' securities lending account.[5]

---

[5]     Other cases cited by the BNY Defendants are inapposite. *DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 720 F. Supp. 1342, 1348 (7th Cir. 1990) concerned a motion for summary judgment, where plaintiff's ***evidence*** failed to account for, *inter alia*, market conditions that formed the backdrop for defendants' investment strategy at time of investment. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 642 (7th Cir. 2005), concerned the district court's decision as to breach of fiduciary duty claim ***after a full bench***

### C. The Examiner's Report Demonstrates That Defendants Viewed Lehman As Increasingly Risky – And Hence Too Risky For Securities Lending

The BNY Defendants contend that, even if the Examiner's Report revealed that the BNY Defendants required Lehman to post additional collateral, the Fund's allegations are insufficient because they make no specific allegation that "BNY Mellon stopped providing credit or viewed the Lehman Notes as in danger of default . . . ." (Def. Br. at 9.) But the Funds do not need to plead that the BNY Defendants cut off credit to Lehman in order to state a claim. The Examiner's Report plainly shows, as set out in the Amended Complaint, that the BNY Defendants viewed Lehman as increasingly risky. (AC ¶¶ 92-94.)

Nor may the BNY Defendants cast aside the Examiner's Report's significance by arguing that information they gained as Lehman's clearing bank was shielded behind a "firewall." (Def. Br. at 9-10.) Indeed, the BNY Defendants' unverified and conclusory statements in their Motion on this issue do not and cannot supply a basis to dismiss the Amended Complaint's allegations; at the very least, the Funds should be permitted to discover and submit evidence concerning the extent to which the units of the BNY Defendants shared information regarding Lehman and which units were shielded behind firewalls and the extent to which those firewalls were respected. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) ("When a federal court reviews the sufficiency of a complaint . . . [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims") (internal quotations omitted). This is particularly true here because:

---

*trial on the merits*. Finally, in *In re Huntington Bancshares Inc. Erisa Litig.*, 620 F. Supp. 2d 842, 852 (S.D. Ohio 2009), the court dismissed claims concerning shares in an employee-owned stock fund because, *inter alia*, (i) an employer cannot violate ERISA by acquiring another company that negatively affected employer's stock price; (ii) the fiduciaries acted prudently in light of the fact that the plan fiduciaries of other similarly situated large public pension funds continued to invest in the company's stock; and (iii) the ERISA fiduciaries had no duty to audit the company's operational affairs – facts that are not present here.

- as noted in the *IBEW* Action, the viability of Lehman was discussed in 2008 by the BNY Defendants' executives at the "Risk, Fiduciary RiskManagment and Global Securities Lending Credit Committees" (*IBEW* Action, 2011 WL 6130831 (Katz Decl., Ex. E), at *3); and

- while the BNY Defendants argue (Def. Br. at 9-10) that a "firewall" hid the knowledge they obtained acting as one of Lehman's clearing banks (AC ¶¶ 8, 90), BNY promoted to the Funds itself as being a "*[u]niquely positioned major Wall Street clearance bank* with credit expertise in the Securities Industry that is second to none" (emphasis added) (Katz Decl., Ex. K at 27), indicating that some information obtained by the BNY Defendants as Lehman's clearing bank is not shielded within the bank by the supposed firewall.

Finally, in a footnote, the BNY Defendants attack the allegation that Lehman had been removed from its list of approved borrowers before its bankruptcy, offering instead a list of approved borrowers dated September 1, 2008. (Def. Br. at 10, n. 5.) However, this allegation was sustained by another court that denied the BNY Defendants' motion to dismiss. *See Pace Indus. Union-Mgmt. Pension Fund* (Katz Decl., Ex. A), at 22 (sustaining complaint that alleged that the BNY Defendants had removed Lehman from the list of approved borrowers for the lending of the plaintiff's securities). Moreover, it is inappropriate for the BNY Defendants to submit evidence in the context of a motion to dismiss, and the proffered document does not suggest that Lehman was on the list of approved borrowers at all relevant times. In any event, Lehman's removal from the list of approved borrowers is just one of many facts demonstrating that the BNY Defendants were well aware of the increasing risk of holding on to Lehman investments in the months, weeks and days leading up to its collapse, as set forth in the Examiner's Report. *See also IBEW* Action, 2011 WL 6130831(Katz Decl., Ex. E), at *3 (finding triable issue in light of evidence that "[BNY] classified Lehman as a purchase-restricted issuer in November 2007, such that [new purchases of Lehman investments were disallowed") (internal quotations omitted).

**IV.**     **The Funds State A Claim Under ERISA § 406**

ERISA § 406(b) bars an ERISA plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b).  Section 406(b) is construed liberally, necessitating a "careful[l]" review of the transaction to determine whether "a fiduciary dealt with the plan assets 'in his own interest,' which "may require courts to engage in the same searching investigation into the objective circumstances of the fiduciary's actions needed to apply the fiduciary loyalty provisions of section 404(a)(1)." *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984); *see also Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (§ 406(b) should be broadly construed and "liability [may] be imposed even where there is no taint of scandal, no hint of self-dealing, no trace of bad faith) (internal quotations omitted).  The BNY Defendants breached § 406(b) by maintaining the Funds' investment in the Lehman Notes, despite ample warning signs, because the BNY Defendants placed their own profit motives – the heightened fees they earned by investing in Lehman as compared to safer investments – ahead of the Funds' interest in principal preservation.  (AC ¶¶ 99, 122-123.)

Again, the BNY Defendants misconstrue the Amended Complaint, arguing that the Funds rely on unsupported allegations concerning the bank's motivation for an imprudent investment decision.  (Def. Br. at 12.)  And, again, this precise argument has been rejected by other courts, which have permitted ERISA § 406(b) claims on the same allegations made by the Funds.  *See, e.g., IBEW* Action, 2011 WL 6130831 (Katz Decl. Ex. E), at *4 (denying the BNY Defendants' motion for summary judgment, concluding that genuine issues of material fact existed concerning whether defendants "dealt with the assets of the plan in [d]efendants' own interest or for their own account"); *Pace Indus. Union-Mgmt. Pension Fund* (Katz Decl., Ex. A), at 30 (sustaining § 406(b) claim arising from "an alleged conflict of interest in which BNY[]'s interest

17

in earning compensation was purportedly adverse to the fund's interest in preserving its assets. And this adverse interest caused, allegedly, BNY[] to invest in risky investments that earned it higher compensation while jeopardizing the firm's assets"); *see also Bd. of Trs. of Operating Eng'rs Pension Trust v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-CIV-9333 KBF, 2013 WL 1234818, at *12 (S.D.N.Y. Mar. 27, 2013) (sustaining breach of loyalty duty claim based on allegations that securities lending bank that "gambled that Lehman would survive when it was the Plan's investment at risk . . . while reducing or eliminating its own exposure when its own money was at risk").[6]

The BNY Defendants next assert that their failure to manage the Funds' securities lending account, and their failure to sell the Lehman Notes before its bankruptcy, is not a "transaction" that constitutes an ERISA § 406(b) violation. (Def. Br. at 12-13.) However, courts – including the *Pace* court as to the BNY Defendants – have rejected this very argument. *See Pace Indus. Union-Mgmt. Pension Fund* (Katz Decl., Ex. A), at 28 (denying motion to dismiss because "the payment of fees to BNYM from the fund's assets in compensation for BNYM's fiduciary services" constituted a "sale or exchange of property of the fund"); *Santomenno v. Transamerica Life Ins. Co.*, No. CV 12-02782 DDP (MANx), 2013 WL 603901, at *11 (C.D. Cal. Feb. 19, 2013) (fiduciary's selections for an initial investment lineup and its collecting of fees constituted a "transaction" sufficient to sustain a claim under ERISA § 406(b)). *See also Bd. of Trs. of Operating Eng'rs Pension Trust* (Katz Decl., Ex. N), 2013 WL 1234818, at *8, *12 (sustaining a § 406(b) claim based on allegations, like here, that a bank failed to divest

---

[6]     For similar reasons, the breach of the duty of loyalty claim under ERISA § 404(a) should survive this Motion. *See Sandoval v. Simmons*, 622 F. Supp. 1174, 1215 (C.D. Ill. 1985) (failure to fulfill fiduciary obligations violated "duties of loyalty, diligence and prudence imposed by ERISA [§] 404(a) . . . ."); *see also Patten*, 703 F. Supp. 2d at 814 (ERISA requires "that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions") (internal citations and quotations omitted).

a securities lending account of Lehman holdings so that it could boost its own profits.)

The case law cited by the BNY Defendants for the purposes of undermining the Funds' ERISA § 406(b) claims is inapposite and should be rejected.[7]

## V.   Dismissal Of Claims Against BNY Mellon Corp. Is Premature

Contrary to the BNY Defendants' position (Def. Br. at 13), the relationship between parent and subsidiary entities is a fact intensive inquiry and is, accordingly, not proper for resolution on a motion to dismiss. *See Teytelbaum v. Unum Grp.*, No. 8:09-cv-1231-T-33TBM, 2010 WL 4689818, at *5 (M.D. Fla. Nov. 11, 2010) (denying dismissal motion, concluding that "[a] fact intensive inquiry is required in order to determine whether [parent corporation] may be held responsible for the alleged breach of contract"); *Bear Hollow, L.L.C. v. Moberk, L.L.C.*, No. 5:05CV210, 2006 WL 1642126, at *17 (W.D.N.C. June 5, 2006) ("[s]ince piercing the corporate veil depends upon facts that Plaintiffs must obtain through discovery, Defendants' Motion to Dismiss is premature"); *Boustead v. Barancik*, 151 F.R.D. 102, 106 (E.D. Wis. 1993) (on veil-piercing claim, "plaintiffs will be permitted to conduct discovery . . . [on] the issue of [entity's] corporate structure"); *U.S. ex rel. Bierman v. Orthofix Int'l, N.V.*, 748 F. Supp. 2d 123, 130 (D. Mass. 2010) ([t]he Court also does not consider arguments with respect to the . . . relationships between corporate entities. Those arguments shall be considered on a motion for summary judgment at the close of discovery.")

---

[7]      For example, *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), did not address the "deal[ing] with" language of 406(b) and primarily concerned whether an ERISA fiduciary's decision not to sell company stock owned by the ERISA plan overcame the *Moench* presumption of prudence, pursuant to which a fiduciary is presumed to comply with ERISA when an employee stock ownership plan (ESOP) fiduciary invests in the employer's stock. *Andersen v. Chrysler Corp.*, 99 F.3d 846 (7th Cir. 1996) concerned no transactions or self-dealing, but rather, allegations that Chrysler published false or misleading plan information and that it denied benefits to plan participants, thereby decreasing the amount of money Chrysler was required to pay under the plan. And the ERISA § 406(b) claim in *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122 (C.D. Cal. 2009) failed not because the activity at issue was not sufficiently a "transaction," but because the plaintiffs failed to "identif[y] any conduct by Defendant in the statutory time period that amounts to a 'transaction' or a 'dealing' with the assets of the plan . . . ." *Id.* at 1126.

Moreover, here, among other things, the BNY Defendants represented to its clients that "BNY Mellon Asset Servicing provides services through The Bank of New York, Mellon Bank, N.A. *and other related companies.*" (Katz Decl., Ex. L at 5, emphasis added.) The Funds should be allowed to conduct discovery on what services these other "related companies" – which could include BNY Mellon Corp. – provided to the Funds and whether such activities render BNY Mellon Corp. an ERISA fiduciary. *See* 29 U.S.C. § 1102. Further, in the *IBEW* Action, the court allowed the plaintiff's ERISA §§ 404 and 406 claims to proceed to trial against both BNY and BNY Mellon Corp, the same defendants named by the Funds. (*IBEW* Action, 2011 WL 6130831 (Katz Decl., Ex. L), at *1.) *See also N.C. Dep't of State Treasurer* (Katz Decl., Ex. D), 2012 WL 5383312, at *3 (denying BNY and parent company's motion for judgment on pleadings, because it was unable "to make a determination as a matter of law with regard to the issue of whether The Bank of New York Mellon Corporation is a proper party to this litigation").

## VI.   If This Court Finds That The Complaint Is Deficient, The Funds Should Be Permitted To Replead

Should this Court find that the Amended Complaint is deficient, the Funds request an opportunity to amend it pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("[l]eave to amend a complaint should be freely given when justice so requires") (internal citations and quotations omitted). There is no prejudice or surprise to the BNY Mellon here and thus no reason to deny the Funds' request.

## CONCLUSION

For the foregoing reasons, the Funds respectfully request that the BNY Defendants' Motion be denied, or, in the alternative, that the Funds be granted leave to replead.

20

Dated: New York, New York
       September 12, 2013

SCHINDLER COHEN & HOCHMAN LLP

By:_____
Lisa C. Cohen lcohen@schlaw.com*
Andrew J. Melnick amelnick@schlaw.com*
Mathew Katz mkatz@schlaw.com*
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005
Tel: (212) 277-6300
Fax: (212) 277-6333
*Admitted *pro hac vice*

(IL ARDC# 1047558)
ASHER, GITTLER GREENFIELD
Local Counsel for I. B. of T. Union
Local No. 710 Pension Fund and I.B.
of T. Union Local 710 Health & Welfare
Fund
200 W. Jackson Blvd., Ste. 1900
Chicago, IL 60606
rbg@ulaw.com

David A. Sawyer dasawyer13@msn.com
Paul M. Newcomer
pmnewcomer@msn.com
LAW OFFICES OF RUSSELL N.
LUPLOW
185 Oakland Ave., Ste. 200
Birmingham, MI 48009
Tel.: (248) 644 8666