IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS UNION LOCAL NO. 710 PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON CORPORATION, et al., <br><br> Defendants. | Case No. 13 C 1844 <br><br> Honorable John Robert Blakey |

MEMORANDUM OPINION AND ORDER

The plaintiffs filed this lawsuit on March 8, 2013, alleging, in a nutshell, that defendants' decision to purchase and hold certain bonds issued by Lehman Brothers Holding Company ("Lehman") constituted a breach of the duties of prudence and loyalty imposed under the Employee Retirement Income Security Act of 1974 ("ERISA"). The defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons explained more fully below, defendants' motion [69] is denied.

Background & Procedural History

The plaintiffs in this ERISA case, the International Brotherhood of Teamsters Union Local No. 710 Pension Fund and the International Brotherhood of Teamsters Union Local No. 710 Health & Welfare Fund, are pension funds that participated in a securities lending program administered by the defendants, Bank

of New York Mellon ("BNYM") and its parent company, Bank of New York Mellon Corporation ("BNYMC"). The plaintiff funds, along with their trustees, have sued, alleging certain ERISA violations in connection with the investments and decisions made by the defendants in the administration of the securities lending program. By way of background, the plaintiff funds "exist to pay the benefits that their thousands of active members, pensioners and benefits recipients have earned"; the funds' assets "provide the means to pay these benefits." First Amended Complaint [21], ¶¶2-3. According to the plaintiffs, the defendants – together, a sophisticated financial institution – solicited the funds to participate in the defendants' securities lending program; in so doing, the defendants touted their securities lending program to be a "[f]lexible and custom-tailored program related to lending, investing and reporting" that was "very low risk." *Id.*, ¶¶1-2, 4, 31-32. Based upon these representations, the funds agreed to participate and executed a Securities Lending Agreement and Guaranty. *Id.*, ¶¶5, 36-37. Defendant BNYM agreed to act as an agent and fiduciary for the funds and agreed to utilize its discretion in accord with the Funds' investment goals and risk profile . . . ." *Id.,* ¶¶5, 40.

In its capacity as the Funds' agent and fiduciary, in August and December of 2006, BNYM invested nearly $25 million of the cash collateral received by the Funds in corporate floating rate notes issue by Lehman Brothers Holding Company. First Amended Complaint [21], ¶¶7, 50. Although the notes may have seemed like a relatively low-risk investment in theory, the riskiness of the Lehman notes grew as the odds of Lehman being able to pay out at maturity fell throughout 2007 and

2008. *Id.*, ¶¶61-62, 64, 66, 68-69, 73, 77. When Lehman filed for bankruptcy on September 15, 2008, the funds were left with an almost $25 million deficiency. *Id.*, ¶¶51, 80.

Plaintiffs allege in their complaint that the defendants "failed to invest the collateral in safe and prudent investments" and that they "failed to monitor the investments to ensure they were at all times proper investments"; they also allege that, "[g]iven the volume of news and first-hand knowledge of Lehman's financial distress, no reasonably prudent securities lending fiduciary would have concluded that Lehman debt was a sufficiently safe investment for a securities lending client and no reasonably prudent securities lending fiduciary would have maintained the collateral investments in the Lehman Notes through Lehman's bankruptcy filing." *Id.*, ¶¶110-112. They allege that the defendants' failure to invest fund assets in a prudent manner constitutes a breach of ERISA's duty of prudence and that defendants' "heads I win, tails you lose" investment strategy violated ERISA's duty of loyalty. *Id.*, ¶¶113, 117.

The defendants moved to dismiss the complaint in its entirety [26]. With respect to BNYMC, the defendants argued that, as the parent company of BNYM, it was not a fiduciary, and that, as a result, the claims against it should be dismissed. Judge Ellis, to whom the case was previously assigned, disagreed, finding that the question of whether Bank of New York Mellon Corporation was, in fact, a functional fiduciary required further fact development. Memorandum Opinion and Order [48], pp. 7-8.

3

With respect to BNYM, the defendants argued that plaintiffs' allegations failed to state a claim for violation of ERISA. In particular, BNYM argued that "red flag" allegations are insufficient to state a claim, and it cited *Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705 (2d Cir. 2013), to support that argument. Judge Ellis rejected the argument, agreeing with the dissent in that case that the majority was improperly adopting a heightened pleading standard. *Id.*, p. 10. Judge Ellis "decline[d] to impose a heightened pleading requirement on plaintiffs asserting ERISA imprudence claims, particularly where the Seventh Circuit has not adopted any such requirement." *Id.*

Judge Ellis ordered the defendants to file their answer by March 4, 2014, and they did. The defendants subsequently filed a motion for judgment on the pleadings [69], raising largely the same arguments they raised in connection with the motion to dismiss. While that motion was being briefed, the case was reassigned to this Court. The motion is now fully briefed and ripe for resolution.

Discussion

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Services Group, Inc.*, No. 14-2571, --- F.3d --- , 2015 WL 542815, at *3 (7th Cir. Feb. 11, 2015)(citing *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). Under both, "the complaint must state a claim that is plausible on its face." *Vinson v.*

4

*Vermilion County, Illinois*, No. 12-3790, --- F.3d ---, 2015 WL 343673, at *3 (7th Cir. Jan. 27, 2015). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the claim, the Court is required to "draw all reasonable inferences and facts in favor of the nonmovant," but "we need not accept as true any legal assertions." *Lodholtz*, 2015 WL 542815, at *3 (citing *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014).

In the present motion, the defendants argue that Judge Ellis was wrong to side with the dissent in *St. Vincent* and that the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459 (2014), "bears on the legal sufficiency of Plaintiffs' ERISA claims and underscores why those claims fail as a matter of law." Motion for Judgment on the Pleadings [69], ¶2. The Court disagrees.

First, the Court does not read *Fifth Third* to be a game-changer – at least not with respect to this case. *Fifth Third* rejects the notion that an ESOP fiduciary is entitled to a presumption of prudence and holds that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversity the ESOP's holdings." 134 S.Ct. at 2467. Although the ruling alters the landscape with respect to imprudence claims

5

against ESOP fiduciaries, this aspect of the decision has no bearing on this case, which involves ERISA fiduciaries.

Nor does *Fifth Third* compel a finding that plaintiffs' claims are necessarily implausible. Applying the plausibility standard spelled out in *Iqbal* and *Twombly*, the Supreme Court in *Fifth Third* noted that, "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." 134 S.Ct. at 2471. But, again, this does not apply to plaintiffs' claims. Significantly, plaintiffs here do not simply allege that the defendants should have recognized, based on publicly-available information alone, that Lehman's debt was over-valued.

Defendants' argument about the impact of *Fifth Third* is based upon a reading of the complaint that is too narrow. The Court does not read the plaintiffs' complaint as alleging that the defendants lacked prescience or that they should have recognized from the information available in the market that the Lehman bonds were over-valued. Rather, the plaintiffs allege that, under the circumstances as they existed in the market at the time, no reasonably prudent securities lending fiduciary would have concluded that Lehman debt was a sufficiently safe investment for a securities lending client and no reasonably prudent securities lending fiduciary would have maintained the collateral investments in the Lehman Notes through Lehman's bankruptcy filing." *E.g.*, [21], ¶112. Thus the claim is not that the defendants were imprudent in failing to recognize that Lehman would file

6

for bankruptcy and not pay out on the notes, but that it was imprudent to hold the Lehman debt, given the circumstances existing in the market and given the plaintiffs' investment profile. Nothing in *Fifth Third* forecloses such claims.

## Conclusion

For the reasons explained above, defendants' motion for judgment on the pleadings [69] is denied.

Dated: March 16, 2015

Entered:

_____
John Robert Blakey
United States District Judge